UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:16-cr-484-T-24 TGW

JOE HARRY PEGG

_____/

### ORDER

This cause comes before the Court on Defendant Joe Pegg's Motion to Suppress (Doc. 48). The Government has filed a response in opposition. (Doc. 49). For the reasons that follow, the motion is DENIED.

**I.   Background[1]**

Defendant is serving a sentence of thirty years' imprisonment at Coleman Federal Correctional Institution ("Coleman") for conspiracy to import marijuana. Following the denial of Defendant's 28 U.S.C. § 2255 motion, Defendant's brother, William "Buck" Pegg, retained defense attorney Katherine Bonner for a substantial fee "to assist [Defendant] in obtaining release from custody." (Doc. 48 at 4). Various people provided cooperation for Defendant's benefit, including Isidro Moreno (Defendant's cell mate for almost ten years) and Fernando Morales (an individual Moreno enlisted to help Defendant), who attempted to set up drug deals with the ultimate objective of providing support for motions to reduce Defendant's sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. Once those drug transactions

---

[1] The facts set forth in the following background are pulled solely from Defendant's motion, and because the motion should be denied on these facts, there is no need for an evidentiary hearing.

were completed, Bonner "began to 'push' for the Government to file the necessary [Rule 35] Motions." (Doc. 48 at 5).

Pursuant both to Defendant's original plea agreement and to the understood operation of Rule 35, monies had to be turned over to the Government. To accomplish this, members of Defendant's family were to work with Assistant United States Attorney ("AUSA") Anita Cream to complete financial affidavits, but this process was both long and fraught with tension. Through this period, several prosecutors who had been involved in Defendant's case at various stages began to question why Morales, who did not personally know Defendant, would offer assistance without compensation. The prosecutors also began to suspect, given the difficulties with securing the financial affidavits from Defendant's family, "that [Defendant] might be discussing assets and matters regarding financial holdings over the telephone with, inter alia, Dolores Pegg and Buck Pegg," so they decided to "pull" Defendant's jail calls. (Doc. 48 at 6).

By listening to Defendant's jail calls from March 2012, prosecutors learned that several payments had been made to Moreno, and that payments were apparently made to Morales, as well.[2] With this information, AUSAs Cream and Stephen Muldrow contacted Bonner and asked her to set up a meeting with Defendant at Coleman. Bonner secured Defendant's consent to the meeting, and on September 11, 2012, the AUSAs interviewed Defendant, in Bonner's presence, for approximately two hours and twenty minutes. Defendant was later indicted for making false statements to a federal law enforcement officer based on the allegedly false statements he made during this interview. (Doc. 1 at 12–13).

---

[2] Moreno and Morales have pleaded guilty for their role in this case.

**II.     Discussion**

Defendant moves the Court to suppress the statements Defendant made during this September 11, 2012 interview on two grounds, both of which are unpersuasive.

First, Defendant argues the statements must be suppressed based on the AUSAs' failure to Mirandize Defendant before the interview. The Supreme Court has "repeatedly declined to adopt any categorical rule with respect to whether the questioning of a prison inmate is custodial" for purposes of *Miranda* warnings. *Howes v. Fields*, 565 U.S. 499, 505 (2012). Instead, the Supreme Court has explained that the term "custody," as used in *Miranda* case law, "is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion," and that (as an initial matter) courts must determine "whether, in light of 'the objective circumstances of the interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* at 508–09 (alteration in original) (citations omitted). And beyond the freedom-of-movement inquiry, courts must also consider "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at 509.

Considering the objective circumstances of the interview here, it is clear that Defendant was not "in custody" for purpose of *Miranda*. At the outset, the Court notes that Defendant's attorney, Bonner, was present and available to advise Defendant throughout the process. In fact, Bonner encouraged Defendant to agree to the interview and obtained Defendant's consent. Although Defendant argues Bonner had "divided loyalty," based on her fee arrangement with Defendant's brother, it is not an altogether uncommon situation for a defendant's family member to retain and compensate a private defense attorney on that defendant's behalf. Here, regardless

of who was paying the bills, Bonner was indisputably retained for the purposes of advising Defendant and obtaining a Rule 35 motion on his behalf.

Furthermore, Defendant agreed to the interview in advance of its occurring. He does not argue he was physically restrained in any way, he does not contend he was at all intimidated, and he does not assert he was misinformed of the circumstances surrounding the interview or the fact that it was being recorded. Taking these circumstances in their totality, there is no indication that Defendant was in any way coerced during this interview. Quite the contrary, the circumstances establish that Defendant undertook the interview knowingly and voluntarily. A *Miranda* warning was, therefore, not required.

Second, Defendant contends the AUSAs set a "perjury trap" for Defendant that compels suppression of his statements. Defendant's attorney candidly admits that he is unaware of a decision that has accepted his argument—and, in fact, the Eleventh Circuit rejected a "perjury trap" argument under distinguishable factual circumstances. (Doc. 48 at 8 (citing *United States v. Chahla*, 752 F.3d 939 (11th Cir. 2014)). Nevertheless, Defendant submits the facts in this case warrant its application.

Where it is discussed, the "perjury trap" is described as being created "when the government calls a witness before the grand jury for the primary purpose of obtaining testimony from him in order to prosecute him later for perjury." *United States v. Chen*, 933 F.3d 793, 796 (9th Cir. 1991) (citations omitted). "It involves the government's use of its investigatory powers to secure a perjury indictment on matters which are neither material nor germane to a legitimate ongoing investigation of the grand jury." *Id.* Importantly, however, "there is no 'perjury trap' when uncooperative witnesses lie in response to questions related to legitimate investigations."

4

*United States v. Waldon*, 363 F.3d 1103, 1112–13 (11th Cir. 2004) (per curiam) (citation omitted).

Even if the Eleventh Circuit had recognized and applied the "perjury trap" in a binding opinion, it would be inapplicable under the present facts. First, Defendant agreed to be interviewed by the AUSAs within Coleman; this interview does not constitute a judicial proceeding, much less testimony before the grand jury. Second, the AUSAs interviewed Defendant to gather evidence that was both material and germane to their investigation of whether payments had been made to third-party cooperators on Defendant's behalf with the objective of convincing the Government to file a Rule 35 motion to benefit Defendant. Because Defendant was interviewed outside of a judicial proceeding in relation to a legitimate criminal investigation, there was no "perjury trap" here.

### III. Conclusion

Accordingly, it is ORDERED and ADJUDGED that Defendant's Motion to Suppress (Doc. 48) is DENIED.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of February, 2017.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record